1

Honorable Thomas S. Zilly

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

| | | |
|---|---|---|
| VERASONICS, INC., a Washington Corporation, | ) ) ) | Civil Action No. 2:17-cv-01764-TSZ |
| Plaintiff, | ) ) | **ANSWER** |
| v. | ) ) | **JURY DEMAND REQUESTED** |
| SUPERSONIC IMAGINE, S.A., a French société anonyme, | ) ) ) | |
| Defendant. | ) ) | |

Defendant Supersonic Imagine, S.A. ("SSI" or "Defendant") answers Verasonics, Inc.'s ("Verasonics" or "Plaintiff") Complaint (Dkt. No. 1, "Complaint"), as follows:

## I.  NATURE OF THIS ACTION

1.      This is an action to address Defendant SSI's willful infringement of Verasonics' patents and misappropriation of Verasonics' trade secrets.

**ANSWER:** SSI admits that Verasonics purports to assert an action for willful infringement of Verasonics' patents and misappropriation of Verasonics' trade secrets but denies there is any factual or legal basis for this action.  SSI denies all allegations of patent infringement and misappropriation of trade secrets.  SSI denies any remaining allegations of this Paragraph of the Complaint.

DEFENDANT'S ANSWER TO COMPLAINT 1
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1

## II.  PARTIES

2      2.       Verasonics is a corporation organized and existing under the laws of the state of

3              Washington. Verasonics has its principal place of business in Kirkland,

4              Washington.

5  **ANSWER:** SSI is without knowledge or information sufficient to form a belief as to the truth of

6  the allegations of this Paragraph of the Complaint and therefore denies the same.

7      3.       On information and belief, SSI is a société anonyme organized and existing under

8              the laws of France, headquartered in Aix-en-Provence, France.

9  **ANSWER:** Admitted.

10

## III.  JURISDICTION AND VENUE

11      4.       This action arises under (1) the patent laws of the United States, 35 U.S.C. §§ 1 *et*

12              *seq*. and (2) the Washington State Uniform Trade Secret Act (RCW §§ 19.108 *et*

13              *seq*.).  The Court has subject matter jurisdiction over the subject matter of this

14              Complaint under 28 U.S.C. §§ 1331 (federal question), 1338(a) (civil action

15              arising under any Act of Congress relating to patent), and under 28 U.S.C. § 1332

16              because this action is between a citizen of Washington and a citizen of a foreign

17              state, France, and the amount in controversy exceeds $75,000, exclusive of

18              interest and costs.  The Court also has subject matter jurisdiction for the trade

19              secret misappropriation claim under 28 U.S.C. §§ 1338(b) and 1367.

20  **ANSWER:**  SSI admits that Verasonics purports to assert an action which arises under (1) the

21  patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. and (2) the Washington State Uniform

22  Trade Secret Act (RCW §§ 19.108 *et seq*.).  Paragraph 4 further states legal conclusions to which

23  no answer is required.  To the extent an answer is deemed to be required, SSI denies any

24  remaining allegations contained in this Paragraph of the Complaint.

25      5.       The Court has personal jurisdiction over SSI because SSI (1) has had systematic

26              and continuous contacts with the Western District of Washington and (2) has

1  purposefully directed its unlawful activities toward the Western District of

2  Washington, and Verasonics' claims arise from those activities.  On information

3  and belief, beginning in or about October 2007 and until at least January 2017

4  (two years after its acts of patent infringement and trade secret misappropriation

5  began), SSI maintained an office in King County, Washington. And, on

6  information and belief, SSI's Director Global Marketing, Ms. Judy Barton, still

7  lives and works in King County.  Moreover, on information and belief, beginning

8  in or about October 2007 and until at least February 2015 (after its acts of patent

9  infringement and trade secret misappropriation began) SSI's United States

10  subsidiary, Supersonic Imagine, Inc. ("SSI INC"), which was responsible for

11  distributing the accused infringing Aixplorer ultrasound systems, had offices in

12  King County, Washington.

13  **ANSWER:**   Paragraph 5 states a legal conclusion to which no answer is required.  To the extent

14  an answer is deemed to be required, SSI denies any remaining allegations contained in this

15  Paragraph of the Complaint.

16  6.      As detailed herein, SSI was party to multiple agreements with Verasonics –

17  spanning nearly nine (9) years – in which (1) Verasonics provided SSI with its

18  proprietary information, (2) the parties collaborated on the development of

19  ultrasound systems built on Verasonics' intellectual property, and (3) SSI licensed

20  Verasonics' proprietary technology. SSI representatives traveled to this District

21  for meetings with Verasonics both to negotiate business relationships with

22  Verasonics and in connection with the parties' agreements and collaboration, and

23  during and/or in connection with those meetings solicited Verasonics to disclose

24  valuable trade secrets.

25  **ANSWER:**  SSI admits it was a party to multiple agreements with Verasonics.  SSI admits its

26  representatives traveled to this District for meetings with Verasonics and in connection with the

DEFENDANT'S ANSWER TO COMPLAINT 3
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

parties' agreements.  SSI further states that Paragraph 6 purports to characterize the contents of written documents.  The contents of the documents speak for themselves and therefore no response is required.  To the extent a response is required, SSI denies the remaining allegations in this Paragraph.

7.  On information and belief, SSI representatives have attended ultrasound conferences in this District. On information and belief, SSI sends sales representatives into this District to sell Aixplorer, and uses, sells, offers to sell and imports Aixplorer within this District. On information and belief, customers in this District such as the University of Washington purchase and use Aixplorer. On information and belief, the Department of Veterans Affairs, VA Medical Center in Seattle, Washington is in the process of procuring a SuperSonic Imagine Aixplorer.  Personal jurisdiction over SSI with respect to all of Verasonics' claims is also proper under the doctrine of pendent personal jurisdiction.

**ANSWER:**  SSI admits its representatives have attended ultrasound conferences in this District. SSI denies any remaining allegations of this Paragraph of the Complaint.

8.  Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because SSI is not a resident of the United States and, therefore, venue is proper in any judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of the action is situated in the Western District of Washington or, alternatively under § 1391(b)(3), because SSI is subject to the Court's personal jurisdiction.

**ANSWER:**  SSI admits it is not a resident of the United States.  Paragraph 8 further states a legal conclusion to which no answer is required.  To the extent an answer is deemed to be required, SSI denies any remaining allegations contained in this Paragraph of the Complaint.

## IV.  FACTS

### A.  Background of the Technology

DEFENDANT'S ANSWER TO COMPLAINT 4
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

9.    In ultrasound, high frequency sound waves (ultrasound waves) are created that exceed the upper limits of human hearing.  Ultrasound waves are created by applying an electrical current to so-called "piezoelectric crystals" (also called elements) located in a device called a transducer or probe.  The crystals produce longitudinal waves which travel outward from the crystals, and can travel through liquid and solid materials, including the tissues of the body.

**ANSWER:**  SSI admits in ultrasound high frequency sound waves (ultrasound waves) can be created that exceed the upper limits of human hearing.  SSI admits ultrasound waves can be created by applying an electrical current to so-called "piezoelectric crystals" (also called elements) located in a device called a transducer or probe.  SSI admits the crystals can produce longitudinal waves which can travel outward from the crystals and can travel through liquid and solid materials, including the tissues of the body.  SSI denies this Paragraph provides a complete description of the background of ultrasound technology or reflects all technical details or implementation regarding ultrasounds.  SSI denies any remaining allegations of this Paragraph of the Complaint.

10.    In a familiar example, when a pregnant woman receives an ultrasound, a transducer that emits ultrasound waves is moved across her abdomen.



DEFENDANT'S ANSWER TO COMPLAINT 5
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1    **ANSWER:**  SSI admits that ultrasound technology can be used on a pregnant woman's

2    abdomen, and a transducer that emits ultrasound waves can be moved across her abdomen.  SSI

3    denies this Paragraph provides a complete description of the background of ultrasound

4    technology or reflects all technical details or implementation regarding ultrasounds.  SSI is

5    without knowledge or information sufficient to form a belief as to the truth of the remaining

6    allegations of this Paragraph of the Complaint and therefore denies the same.

7        11.    Ultrasound waves travel into the body. When they encounter a border between

8               two tissues that conduct sound differently, some of the sound waves are reflected

9               back to the transducer probe.  These reflected waves are called echoes.   Thus, the

10              transducer both transmits ultrasound waves and receives echoes.  The reflected

11              sound waves strike the piezoelectric crystals in the transducer, and cause the

12              crystals to generate an electrical current.

13   **ANSWER:**  SSI admits ultrasound waves can travel into a body.  SSI admits when ultrasound

14   waves encounter a border between two tissues that conduct sound differently, some of the sound

15   waves can be reflected back to a transducer probe.  SSI admits these reflected waves can be

16   called echoes.   SSI admits a transducer may both transmit ultrasound waves and receive echoes.

17   SSI admits reflected sound waves can strike piezoelectric crystals in a transducer, and can cause

18   crystals to generate an electrical current.  SSI denies this Paragraph provides a complete

19   description of the background of ultrasound technology or reflects all technical details or

20   implementation regarding ultrasounds.  SSI denies any remaining allegations of this Paragraph of

21   the Complaint.

22       12.    The ultrasound system processes the electrical current created by the echoes to

23              form an image, like this one:

24

25

26

DEFENDANT'S ANSWER TO COMPLAINT 6
(Case No. 2:17-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1
2
3
4
5
6
7
8



9  **ANSWER:** SSI admits an ultrasound system can process an electrical current created by echoes
10 to form an image. SSI denies this Paragraph provides a complete description of the background
11 of ultrasound technology or reflects all technical details or implementation regarding
12 ultrasounds. SSI denies any remaining allegations of this Paragraph of the Complaint.

13         13.    In ultrasound imaging, the echo signal may be referred to as an "RF signal," and
14                the data received by the transducers is called "RF data."

15 **ANSWER:** SSI admits in ultrasound imaging, the echo signal could be referred to as an "RF
16 signal," and the data received by the transducers could be called "RF data." SSI denies this
17 Paragraph provides a complete description of the background of ultrasound technology or
18 reflects all technical details or implementation regarding ultrasounds. SSI denies any remaining
19 allegations of this Paragraph of the Complaint.

20         14.    Like a computer, an ultrasound system has various processing units, including
21                modules for RF data processing, image formation and processing, and system
22                control.

23 **ANSWER:** SSI admits an ultrasound system can have various processing units, including
24 modules for RF data processing, image formation and processing, and system control. SSI
25 denies this Paragraph provides a complete description of the background of ultrasound

26

DEFENDANT'S ANSWER TO COMPLAINT 7
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1    technology or reflects all technical details or implementation regarding ultrasounds.  SSI denies

2    any remaining allegations of this Paragraph of the Complaint.

3    **B.    Verasonics Develops Cutting-Edge Ultrasound Technology**

4    15.    Verasonics is a privately held company founded in June 2001 that provides

5    cutting-edge ultrasound devices and technology to medical researchers and

6    companies for use in discovery of new therapeutic and diagnostic uses for

7    ultrasound and for the development of ultrasound systems for use in clinical

8    applications.  Verasonics' co-founders are Chief Executive Officer Lauren

9    Pflugrath and Vice President and Chief Technology Officer Ronald Daigle, Ph.D.

10   Mr. Pflugrath has 30 years of experience in ultrasound technology management

11   and is an inventor on numerous patents directed to ultrasound technology.  Dr.

12   Daigle has over 40 years of experience in ultrasound research and development,

13   has authored more than 35 publications on ultrasound technology and is an

14   inventor on 19 ultrasound patents worldwide.

15   **ANSWER:**  SSI is without knowledge or information sufficient to form a belief as to the truth of

16   the allegations of this Paragraph of the Complaint and therefore denies the same.

17   16.    Verasonics has developed pioneering ultrasound systems that provide researchers

18   and developers with the performance and flexibility required for medical

19   innovation.  Verasonics' ultrasound systems and technology have been used to

20   develop a wide variety of new diagnostic and therapeutic applications for

21   ultrasound technology, including high frame rate 2D (B-Mode), high frame blood

22   flow, high intensity focused ultrasound (HIFU), functional Doppler (very

23   sensitive blood flow), fast whole breast imaging, quantitative vector blood flow,

24   automatic trans-cranial Doppler, renal denervation (reducing blood pressure by

25   using HIFU), shear wave elastography, or SWE, (a technique for measuring the

26   stiffness of tissue that can be used to help differentiate normal tissue from

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1     abnormal tissue or diseased tissue such as cancer), single angle quantitative blood

2     flow, photo acoustics, enhanced drug delivery, high frequency imaging and many

3     others.  Verasonics' systems can also be used in non-medical applications such as

4     non-destructive testing.

5  **ANSWER:** SSI is without knowledge or information sufficient to form a belief as to the truth of

6  the allegations of this Paragraph of the Complaint and therefore denies the same.

7     17.     Verasonics pioneered technology that enables software-based ultrasound imaging

8     to be performed at far greater speeds, sensitivity and resolution than its

9     competitors. Industry leaders have hailed Verasonics' technology as a major

10     breakthrough in the industry.

11  **ANSWER:**  SSI is without knowledge or information sufficient to form a belief as to the truth of

12  the allegations of this Paragraph of the Complaint and therefore denies the same.

13     18.     Verasonics' novel ultrasound technology uses data acquisition boards in

14     conjunction with software running on a host computer to create ultrasound waves,

15     receive echoes and process image data.  The acquisition boards acquire RF data

16     and transfer it to a host computer over a high-speed cable.  Verasonics software

17     running on the host computer controls the Verasonics hardware, processes

18     ultrasound data, and displays ultrasound images.

19  **ANSWER:**  SSI is without knowledge or information sufficient to form a belief as to the truth of

20  the allegations of this Paragraph of the Complaint and therefore denies the same.

21     19.     In contrast to conventional architectures, Verasonics' revolutionary technology

22     allows for real-time beamforming and image reconstruction in software.  Most

23     ultrasound systems perform beamforming in hardware due to the sheer volume of

24     processing involved.  Verasonics' breakthrough innovation required that it

25     overcome numerous technological hurdles including transmitting RF data to the

26     host computer at record speeds of several Gigabytes per second and performing

DEFENDANT'S ANSWER TO COMPLAINT 9
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1    extensive calculations in software in real-time.  Verasonics' novel software

2    beamforming and image reconstruction technology – which includes its

3    proprietary pixel-oriented processing technology – opened the door to novel

4    methods of image formation allowing ultrasound imaging frame rates at an

5    unprecedented rate of 10,000 frames per second.

6  **ANSWER:**  SSI is without knowledge or information sufficient to form a belief as to the truth of

7  the allegations of this Paragraph of the Complaint and therefore denies the same.

8        20.    Verasonics patented aspects of its breakthrough pixel-oriented processing

9               technology in the United States and throughout the world, including in Europe,

10              China, Japan, Canada and Korea.

11  **ANSWER:**  SSI is without knowledge or information sufficient to form a belief as to the truth of

12  the allegations of this Paragraph of the Complaint and therefore denies the same.

13       21.    On October 16, 2012, the United States Patent and Trademark Office ("PTO")

14              duly and legally issued U.S. Patent No. 8,287,456 ("the '456 Patent").  The '456

15              Patent is entitled "Ultrasound Imaging System With Pixel Oriented Processing,"

16              and is generally directed to systems and methods of capturing and processing

17              ultrasound data and generating images from the data using novel pixel-oriented

18              processing techniques. A true and correct copy of the '456 Patent is attached

19              hereto as Exhibit 1.

20  **ANSWER:**  SSI admits that the face of the '456 Patent states that the title is "Ultrasound

21  Imaging System With Pixel Oriented Processing," and that the face of the '456 Patent states it

22  issued on October 16, 2012.  SSI is without knowledge or information sufficient to form a belief

23  as to the truth of the remaining allegations of this Paragraph of the Complaint and therefore

24  denies the same.

25

26

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

22.     Dr. Ronald Daigle is the named inventor on the '456 Patent and Verasonics is the
owner by assignment of all right, title and interest in and to the '456 Patent
including all claims for infringement of the '456 Patent.

**ANSWER:**  SSI admits that the face of the '456 Patent names Ronald Daigle as the inventor.
SSI is without knowledge or information sufficient to form a belief as to the truth of the
remaining allegations of this Paragraph of the Complaint and therefore denies the same.

23.     On May 12, 2015, the PTO duly and legally issued U.S. Patent No. 9,028,411
("the '411 Patent").  The '411 Patent is a continuation of the '456 Patent and is
entitled "Ultrasound Imaging System With Pixel Oriented Processing."  The '411
Patent is generally directed to systems and methods of capturing and processing
ultrasound data and generating images from the data using novel pixel-oriented
processing techniques.  A true and correct copy of the '411 Patent is attached
hereto as Exhibit 2.

**ANSWER:**  SSI admits that the face of the '411 Patent states that the title is "Ultrasound
Imaging System With Pixel Oriented Processing," that the face of the '411 Patent states it issued
on May 12, 2015, and that the face of the '411 Patent states that it is a continuation of the '456
Patent.  SSI is without knowledge or information sufficient to form a belief as to the truth of the
remaining allegations of this Paragraph of the Complaint and therefore denies the same.

24.     Dr. Daigle is the named inventor on the '411 Patent and Verasonics is the owner
by assignment of all right, title and interest in and to the '411 Patent including all
claims for infringement of the '411 Patent.

**ANSWER:**  SSI admits that the face of the '411 Patent names Ronald Daigle as the inventor.
SSI is without knowledge or information sufficient to form a belief as to the truth of the
remaining allegations of this Paragraph of the Complaint and therefore denies the same.

25.     On May 16, 2017, the PTO duly and legally issued U.S. Patent No. 9,649,094
("the '094 Patent").  The '094 Patent is a continuation of the '411 Patent and is

DEFENDANT'S ANSWER TO COMPLAINT 11
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1   entitled "Ultrasound Imaging System With Pixel Oriented Processing."  The '094

2   Patent is generally directed to systems and methods of capturing and processing

3   ultrasound data and generating images from the data using novel pixel-oriented

4   processing techniques.  A true and correct copy of the '094 Patent is attached

5   hereto as Exhibit 3.

6   **ANSWER:**  SSI admits that the face of the '094 Patent states that the title is "Ultrasound

7   Imaging System With Pixel Oriented Processing," that the face of the '094 Patent states it issued

8   on May 16, 2017, and that the face of the '411 Patent states that it is a continuation of the '094

9   Patent.  SSI is without knowledge or information sufficient to form a belief as to the truth of the

10  remaining allegations of this Paragraph of the Complaint and therefore denies the same

11      26.   Dr. Daigle is the named inventor on the '094 Patent and Verasonics is the owner

12            by assignment of all right, title and interest in and to the '094 Patent including all

13            claims for infringement of the '094 Patent.

14  **ANSWER:**  SSI admits that the face of the '094 Patent names Ronald Daigle as the inventor.

15  SSI is without knowledge or information sufficient to form a belief as to the truth of the

16  remaining allegations of this Paragraph of the Complaint and therefore denies the same.

17      27.   The application that led to the '456 Patent is U.S. Patent Application Serial No.

18            11/911,633, filed as International Application No. PCT/US2006/014096 entitled

19            "Ultrasound Imaging System With Pixel Oriented Processing" (the "PCT

20            Application").  The PCT Application claims priority to U.S. Provisional Patent

21            Application Ser. No. 60/671,416 entitled "Ultrasound Imaging System with Pixel

22            Oriented Image Formation," ("the Provisional Application").  The '456, '411 and

23            '094 Patents all claim priority to the Provisional Application.

24  **ANSWER:**  SSI admits that the face of the '456 Patent states that the application that led to the

25  '456 Patent is U.S. Patent Application Serial No. 11/911,633.  SSI admits the face of the '456

26  application lists Provisional Application No. 60/671,416 as a Related U.S. Application.  SSI is

1   without knowledge or information sufficient to form a belief as to the truth of the remaining

2   allegations of this Paragraph of the Complaint and therefore denies the same.

3       **C.      SSI Seeks To Commercialize Ultrasound Systems Built On Verasonics'**

4               **"Innovative" Technology**

5       28.     SSI is a French company which, on information and belief, was founded in April

6               2005 for the purpose of developing and marketing medical imaging products

7               including ultrasound systems.  On or about April 11, 2005, SSI co-founder, Dr.

8               Jacques Souquet sent an email to Verasonics' CEO Lauren Pflugrath explaining

9               that SSI was "now 'rolling'" and that SSI wanted to pursue Verasonics' approach

10              to beamforming (*i.e.*, Dr. Daigle's novel pixel-oriented processing technology).

11              Dr. Souquet extolled Dr. Daigle's pixel-oriented processing technology as the

12              "most innovative" SSI had seen, and requested a meeting between Verasonics and

13              SSI to discuss "[Dr. Daigle's] architecture and [SSI's] requirements."  Attached

14              hereto as Exhibit 4 is a true and correct copy of Dr. Souquet's email.

15  **ANSWER:**  SSI admits it is a French company which was founded in April 2005, *inter alia*, for

16  the purpose of developing medical imaging products including ultrasound systems.  SSI admits

17  that on April 11, 2005, SSI co-founder Dr. Jacques Souquet sent an email to Lauren Pflugrath.

18  SSI further states that Paragraph 28 purports to characterize the contents of a written document.

19  The contents of the document speak for themselves and therefore no response is required.  To the

20  extent a response is required, SSI denies the remaining allegations in this Paragraph.

21      29.     Effective April 25, 2005, SSI and Verasonics entered into a Mutual

22              Confidentiality Agreement ("CDA") to permit the parties to exchange

23              confidential information and materials to explore a potential business relationship.

24  **ANSWER:**  SSI admits that SSI and Verasonics entered into a Mutual Confidentiality

25  Agreement ("CDA").  SSI further states that Paragraph 29 purports to characterize the contents

26  of a written document.  The contents of the document speak for themselves and therefore no

DEFENDANT'S ANSWER TO COMPLAINT 13
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

response is required.  To the extent a response is required, SSI denies the remaining allegations in this Paragraph.

30.     The CDA defined Confidential Information to include all manner of confidential, proprietary, or trade secret technical information including information relating to "technology, software, products, services, designs [and] methodologies . . . ."  The CDA provided that such confidential information was to be used solely for the purpose of pursuing a business relationship.

**ANSWER:**  SSI states that Paragraph 30 purports to characterize the contents of a written document.  The contents of the document speak for themselves and therefore no response is required.  To the extent a response is required, SSI denies the remaining allegations in this Paragraph.

31.     In the spring and summer of 2005, Verasonics and SSI exchanged correspondence and met both in King County, Washington and Aix-en-Provence to discuss a business relationship in which, among other things, SSI and Verasonics would collaborate on a commercial ultrasound system built on Verasonics' intellectual property and marketed by SSI.

**ANSWER:**  SSI admits that in the spring and summer of 2005, representatives of Verasonics and SSI exchanged correspondence.  SSI admits that representatives of Verasonics and SSI met both in King County, Washington and Aix-en-Provence in 2005 to discuss a potential business relationship.  SSI denies the remaining allegations in this Paragraph.

32.     In August 2005, SSI told Verasonics that it would be building its ultrasound systems on Verasonics' technology and asked Verasonics to consider the contours of a collaboration agreement.

**ANSWER:**  SSI admits that in August 2005, SSI asked Verasonics to consider contours of an agreement.  SSI denies the remaining allegations in this Paragraph.

DEFENDANT'S ANSWER TO COMPLAINT 14
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

33.     Throughout 2005 and early 2006, the parties negotiated the terms of their relationship and in January 2006 met in King County in order to finalize an agreement. On February 13, 2006, SSI and Verasonics entered into a Memorandum of Understanding ("MOU") in which the parties agreed to work together on the development of an ultrasound system incorporating Verasonics' proprietary technology.  The MOU expressed SSI's intent to: (1) use Verasonics' technology to develop products and incorporate Verasonics' technology into SSI's products, and (2) collaborate with Verasonics in order to leverage Verasonics' know-how and intellectual property to make a commercial ultrasound system based on Verasonics' pixel-oriented processing technology.

**ANSWER:** SSI admits that throughout 2005 and early 2006, the parties negotiated the terms of an agreement and in January 2006 met in King County in order to finalize an agreement.  SSI admits that on February 13, 2006, SSI and Verasonics entered into a Memorandum of Understanding ("MOU").  SSI further states that Paragraph 33 purports to characterize the contents of a written document.  The contents of the document speak for themselves and therefore no response is required.  To the extent a response is required, SSI denies the remaining allegations in this Paragraph.

34.     The MOU required a dedicated development effort by Verasonics of an ultrasound system for SSI based on Verasonics' architecture.  The MOU required that each party identify a project engineer or manager responsible for the collaboration.  The MOU also required that SSI and Verasonics jointly plan, develop and update a development plan for the collaboration.

**ANSWER:** SSI states that Paragraph 34 purports to characterize the contents of a written document.  The contents of the document speak for themselves and therefore no response is required.  To the extent a response is required, SSI denies the remaining allegations in this Paragraph.

DEFENDANT'S ANSWER TO COMPLAINT 15
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

35.     The MOU provided for an initial planning meeting, quarterly meetings to review the status of the collaboration and discuss future planning, and weekly video conferences to address technical and project management issues.  The MOU also contemplated that personnel from Verasonics and SSI would communicate daily.

**ANSWER:**   SSI states that Paragraph 35 purports to characterize the contents of a written document.  The contents of the document speak for themselves and therefore no response is required.  To the extent a response is required, SSI denies the remaining allegations in this Paragraph.

36.     On April 30 and May 1, 2006, SSI and Verasonics met in King County to discuss, among other things, the hardware and software architecture for the ultrasound system to be developed under the MOU.

**ANSWER:**  SSI admits that on April 30 and May 1, 2006, SSI and Verasonics met in King County.  SSI denies any remaining allegations of this Paragraph of the Complaint.

37.     Under the MOU, Verasonics was responsible for, among other things, designing and developing the ultrasound system's data acquisition hardware and providing the firmware and software necessary to implement Verasonics' proprietary pixel-oriented processing technology. Verasonics also was required to provide a simulator to SSI which incorporated Verasonics' pixel-oriented processing technology and allowed a user to simulate various ultrasound techniques.  The MOU defined Pixel-Oriented Processing as the method of ultrasound beamforming and image formation detailed in Verasonics' Provisional Application.  And, the MOU defined Pixel-Oriented Processing Engine ("POPE") as the core software module implementing pixel-oriented processing, and included a separate Verasonics proprietary software program known as a Hardware Abstraction Layer ("HAL") that interfaces the pixel-oriented processing software with the ultrasound system hardware.

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1    **ANSWER:**  SSI states that Paragraph 37 purports to characterize the contents of a written

2    document.  The contents of the document speak for themselves and therefore no response is

3    required.  To the extent a response is required, SSI denies the remaining allegations in this

4    Paragraph.

5              38.    The MOU provided for a license from Verasonics to SSI of Verasonics'

6                     proprietary pixel-oriented processing technology described in Verasonics'

7                     Provisional Application.   The license was exclusive to SSI when used in the field

8                     of Shearwave Elastography Imaging and Strainwave Elastography Imaging.

9    **ANSWER:**  SSI states that Paragraph 38 purports to characterize the contents of a written

10   document.  The contents of the document speak for themselves and therefore no response is

11   required.  To the extent a response is required, SSI denies the remaining allegations in this

12   Paragraph.

13             39.    The MOU provided that SSI would pay Verasonics for its development efforts

14                    and pay a royalty on sales of its ultrasound systems to license the technology

15                    described in Verasonics' Provisional Application.  The MOU provided that if a

16                    patent based on the Provisional Application did not issue or the claims of the

17                    issued patent were narrow, a license would still be required for the POPE and

18                    Verasonics' trade secrets.

19   **ANSWER:**  SSI states that Paragraph 39 purports to characterize the contents of a written

20   document.  The contents of the document speak for themselves and therefore no response is

21   required.  To the extent a response is required, SSI denies the remaining allegations in this

22   Paragraph.

23             40.    The MOU also contained broad Confidentiality Provisions, defining Confidential

24                    Information to include all manner of confidential, proprietary, or trade secret

25                    technical information:

26                    CONFIDENTIALITY

DEFENDANT'S ANSWER TO COMPLAINT 17
(Case No. 2:17-cv-1764-TSZ)

1  As used herein, confidential information shall mean all confidential,

2  proprietary information and intellectual property disclosed by either party

3  to this Agreement to the other party hereto, including but not limited to

4  information regarding either party's Products, software, technology, trade

5  secrets, know-how, processes, business and regulatory status and

6  strategies, financial condition, process information, computer files,

7  computer printouts, computer programs (in any form), computer

8  programming techniques, drawings, documents, specifications, formulas,

9  sketches, evaluations, findings, methods, processes, descriptions and

10  information concerning customers, markets, product sales, costs, current

11  products, future product plans and product investigations and all record

12  bearing media containing or disclosing such information and techniques

13  which is disclosed pursuant to this Agreement and other similar

14  information ("Confidential Infrmation")

15  All Confidential Information is and shall remain the property of the

16  disclosing party. By disclosing Confidential Information to a party relating

17  to consulting services of the Products, the disclosing party does not grant

18  any express or implied right to the receiving party to or under the

19  Confidential Information.

20  Receiving party agrees that the Confidential Information of disclosing

21  party hereto is confidential and proprietary information; and receiving

22  party agrees

23  (i)  to take all precautions necessary to maintain the confidential nature

24  of the Confidential Information disclosed to it and to use it only in

25  connection with the purpose of this Agreement; and,

26

DEFENDANT'S ANSWER TO COMPLAINT 18
(Case No. 2:17-cv-1764-TSZ)

1

2

3

4

5

6

7

             (ii)     to hold all Confidential Information of disclosing party in strict confidence and not to disclose any of such Confidential Information to any third party; and,

             (iii)    not to use any of such Confidential Information for its own benefit, or for the benefit of any other person, business or entity; and,

             (iv)    not to use the Confidential Information for any purpose other than those explicitly written agreed upon by disclosing party in advance.

8 **ANSWER:** SSI states that Paragraph 40 purports to characterize the contents of a written

9 document. The contents of the document speak for themselves and therefore no response is

10 required. To the extent a response is required, SSI denies the remaining allegations in this

11 Paragraph.

12       41.     The MOU contemplated that the parties would enter into a further agreement,

13             referred to in the MOU as a "formal agreement." Accordingly, throughout 2006

14             while the parties' collaboration was ongoing the parties negotiated the formal

15             agreement contemplated by the MOU.

16 **ANSWER:** SSI states that Paragraph 40 purports to characterize the contents of a written

17 document. The contents of the document speak for themselves and therefore no response is

18 required. To the extent a response is required, SSI denies the remaining allegations in this

19 Paragraph.

20       42.     On November 22, 2006, the parties entered into a Joint Development Agreement

21             ("JDA"). The JDA defined the purpose of the Agreement as developing

22             prototype ultrasound systems built on Verasonics' technology, and the delivery of

23             current versions of Verasonics' simulator software as they became available.

24 **ANSWER:** SSI admits that on November 22, 2006, the parties entered into a JDA. SSI states

25 that Paragraph 42 further purports to characterize the contents of a written document. The

26

DEFENDANT'S ANSWER TO COMPLAINT 19
(Case No. 2:17-cv-1764-TSZ)

1  contents of the document speak for themselves and therefore no response is required.  To the

2  extent a response is required, SSI denies the remaining allegations in this Paragraph.

3    43.    The JDA recognized that pursuant to the MOU an initial planning meeting and

4            quarterly on-site planning meetings had already taken place.  The JDA provided

5            for quarterly planning meetings to review status, plan future activities and modify

6            the resource and funding plan.  The JDA likewise provide for weekly video

7            conferences between SSI and Verasonics to address technical and project

8            management issues, and expressed the parties' understanding that their respective

9            project team members would communicate daily.  The JDA provided for a

10           Steering Committee composed of three people from SSI and three from

11           Verasonics and a Management Committee of which Dr. Souquet and Mr.

12           Pflugrath were the initial members.  The JDA required that project teams prepare

13           written reports for the Steering Committee every three months detailing the

14           progress of the project, development of project technology, and future direction.

15           The JDA also included planned visits by SSI's personnel to Verasonics' facility in

16           King County, Washington.

17  **ANSWER:**   SSI states that Paragraph 43 purports to characterize the contents of a written

18  document.  The contents of the document speak for themselves and therefore no response is

19  required.  To the extent a response is required, SSI denies the remaining allegations in this

20  Paragraph.

21    44.    Under the JDA, Verasonics was required to provide SSI with hardware, firmware

22           and software – including Verasonics' POPE – in accordance with specifications

23           recited in Appendices attached to the agreement.  The JDA defined the POPE to

24           include source code and to specify that the POPE source code was Verasonics'

25           Confidential Information.  It also specified that Verasonics owned the Intellectual

26

DEFENDANT'S ANSWER TO COMPLAINT 20
(Case No. 2:17-cv-1764-TSZ)

1      Property Rights in the POPE, and required Verasonics to provide SSI with

2      Verasonics' simulator software program.

3  **ANSWER:**  SSI states that Paragraph 44 purports to characterize the contents of a written

4  document.  The contents of the document speak for themselves and therefore no response is

5  required.  To the extent a response is required, SSI denies the remaining allegations in this

6  Paragraph.

7      45.    The JDA made clear that Verasonics would provide SSI with all manner of

8      Verasonics' proprietary materials including documentation, schematics,

9      blueprints, manuals, and source code.

10  **ANSWER:** SSI states that Paragraph 45 purports to characterize the contents of a written

11  document.  The contents of the document speak for themselves and therefore no response is

12  required.  To the extent a response is required, SSI denies the remaining allegations in this

13  Paragraph.

14      46.    Under the JDA SSI also entered into a license with Verasonics in which SSI

15      licensed, among other things:

16      a.    Verasonics' intellectual property embodied in the prototype

17      ultrasound systems developed pursuant the JDA.

18      b.    Verasonics' proprietary pixel-oriented processing technology for

19      use in SSI's ultrasound systems based on Verasonics' prototype

20      hardware.

21  **ANSWER:**  SSI states that Paragraph 46 purports to characterize the contents of a written

22  document.  The contents of the document speak for themselves and therefore no response is

23  required.  To the extent a response is required, SSI denies the remaining allegations in this

24  Paragraph.

25      47.    The JDA broadly defined Intellectual Property Rights or IP as:

26

DEFENDANT'S ANSWER TO COMPLAINT 21
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1         [A]ll worldwide intellectual property or industrial property rights arising

2         under statutes, laws, regulations, common law, treaties, conventions or

3         otherwise, and whether or not vested or inchoate, including, without

4         limitation, all (i) patents, patent applications, conceptions, Inventions,

5         discoveries and improvements owned or licensable, including without

6         limitation any patent applications filed or patents acquired after the

7         Effective Date for any IP in existence prior to or on the Effective Date or

8         created during the Term of this Agreement; (ii) works of authorship and

9         all associated rights, including copyrights, copyright applications,

10        copyright registrations, moral rights, mask work rights, mask work

11        applications, and mask work registrations; (iii) any trade secrets and

12        Confidential Information and associated rights; (iv) all trademarks, trade

13        dress or service marks and associated rights; (v) any rights analogous to

14        those set forth in this paragraph anywhere in the world, and the subject

15        matter thereof; and modifications, derivative works, divisionals,

16        continuations, continuations-in-part, renewals, reissues, extensions and

17        foreign counterparts, of any of the foregoing.

18  **ANSWER:**  SSI states that Paragraph 47 purports to characterize the contents of a written

19  document.  The contents of the document speak for themselves and therefore no response is

20  required.  To the extent a response is required, SSI denies the remaining allegations in this

21  Paragraph.

22        48.     The JDA required SSI to pay a running royalty to Verasonics on SSI's sales of

23                ultrasound systems using or containing any Verasonics' Intellectual Property

24                Rights.

25  **ANSWER:**   SSI states that Paragraph 48 purports to characterize the contents of a written

26  document.  The contents of the document speak for themselves and therefore no response is

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1  required.  To the extent a response is required, SSI denies the remaining allegations in this
2  Paragraph.

3      49.    The JDA recognized that Verasonics had filed the Provisional Application and the
4             PCT Application and referred to the PCT Application as "the V Patent."  The
5             JDA required that SSI pay a running royalty on any SSI ultrasound system with a
6             Shear Wave Elastography and Strain Imaging feature using or subject to the V
7             Patent or any other IP rights owned or jointly owned by Verasonics whether or
8             not the IP was developed during the term of the JDA.

9             The JDA noted that SSI was not planning to offer an ultrasound system that did
10            not have Shear Wave Elastography and Strain Imaging, but stated that if SSI did
11            so, the parties would negotiate in good faith a royalty-bearing license to SSI for
12            such products as well.  The JDA also provided that if Verasonics' PCT
13            Application did not result in an issued United States patent, SSI would
14            nonetheless be required to pay Verasonics a lower lump sum per ultrasound
15            system it sold.

16  **ANSWER:**  SSI states that Paragraph 49 purports to characterize the contents of a written
17  document.  The contents of the document speak for themselves and therefore no response is
18  required.  To the extent a response is required, SSI denies the remaining allegations in this
19  Paragraph.

20      50.    The JDA made clear that Verasonics retained ownership of all intellectual
21            property that it brought to the parties' collaboration.  The JDA also specified that
22            Verasonics retained sole ownership of IP that is in or to the POPE as well as sole
23            ownership of the IP and licensing rights to the simulator and related simulator
24            technology.

25  **ANSWER:**  SSI states that Paragraph 50 purports to characterize the contents of a written
26  document.  The contents of the document speak for themselves and therefore no response is

DEFENDANT'S ANSWER TO COMPLAINT 23
(Case No. 2:17-cv-1764-TSZ)

1  required.  To the extent a response is required, SSI denies the remaining allegations in this

2  Paragraph.

3      51.    The JDA contained a broad confidentiality provision which stated:

4      "Confidential Information" is to be construed broadly and includes all of

5      the confidential or proprietary information or the trade secrets of a party,

6      including but not limited to all of the following (so long as such has not

7      been publicly released by an authorized representative of the party owning

8      such Confidential Information): business and marketing plans, patent

9      strategies, competitive analysis, research, data and other recorded

10      information, apparatus, markets, customer information, designs, devices,

11      discoveries, drawings, Inventions (whether patentable, copyrightable, or

12      otherwise subject of intellectual property protection, and whether or not

13      reduced to practice), know-how, materials and documents, finances,

14      procedures and products, software (including interfaces, object code,

15      source code, firmware and any and all enhancements, related

16      documentation, releases, revisions, and updates thereto), any customer

17      proprietary information received under nondisclosure agreements from a

18      party's customers, sources of supply, specifications, techniques, texts,

19      trade secrets, specifications, and the like, all whether in preliminary or

20      final form and in and on any media whatsoever, that are created,

21      conceived, reduced to practice, developed, discovered, invented or made,

22      prior to, on or after the Effective Date.

23  **ANSWER:**  SSI states that Paragraph 51 purports to characterize the contents of a written

24  document.  The contents of the document speak for themselves and therefore no response is

25  required.  To the extent a response is required, SSI denies the remaining allegations in this

26  Paragraph.

DEFENDANT'S ANSWER TO COMPLAINT 24
(Case No. 2:17-cv-1764-TSZ)

52.     The JDA provided strict limits on use and disclosure of Confidential Information: Use and Disclosure. All Confidential Information (as defined in Article I above) of a disclosing party shall be held in confidence by the receiving party to the same extent and with at least the same degree of care as such receiving party protects its own confidential or proprietary information of like kind and import, but in no event using less than a reasonable degree of care.  A receiving party shall not disclose, duplicate, publish, release, transfer or otherwise make available Confidential Information of the disclosing party in any form to, or for the use or benefit of, any third party without the disclosing party's consent except as expressly granted in this Agreement or any Appendices.

**ANSWER:**   SSI states that Paragraph 53 purports to characterize the contents of a written document.  The contents of the document speak for themselves and therefore no response is required.  To the extent a response is required, SSI denies the remaining allegations in this Paragraph.

53.     The JDA provided that the limitations on use and disclosure of Confidential Information would survive termination of the JDA.

**ANSWER:**  SSI states that Paragraph 53 purports to characterize the contents of a written document.  The contents of the document speak for themselves and therefore no response is required.  To the extent a response is required, SSI denies the remaining allegations in this Paragraph.

54.     The JDA further provided that "where any term or condition of the MOU is inconsistent with or contradicts a term or condition of [the JDA], the [JDA] shall prevail."

**ANSWER:**  SSI states that Paragraph 54 purports to characterize the contents of a written document.  The contents of the document speak for themselves and therefore no response is

DEFENDANT'S ANSWER TO COMPLAINT 25
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1  required.  To the extent a response is required, SSI denies the remaining allegations in this

2  Paragraph.

3       55.     Pursuant to the JDA, Verasonics provided SSI with all manner of confidential,

4              trade secret, and proprietary information including, among other things, the

5              simulator and associated source code, the source code for Verasonics' pixel-

6              oriented processing program, the source code for the HAL, matrices for use with

7              the pixel-oriented processing system, know-how and implementation details

8              regarding pixel-oriented processing, know-how and implementation details

9              regarding Direct Memory Access ("DMA"), and know-how and implementation

10              details regarding the transfer of RF data from an acquisition board to a host

11              computer.

12  **ANSWER:**  SSI admits that Verasonics provided SSI with information.  SSI denies that any

13  such information was confidential, trade secret, and/or proprietary information at the time and/or

14  is confidential, trade secret, and/or proprietary now.  SSI denies any remaining allegations of this

15  Paragraph of the Complaint.

16       56.     Verasonics' technical personnel, including Dr. Daigle, engaged in numerous

17              communications with SSI's technical personnel to discuss Verasonics' technology

18              including software architectures and pixel-oriented processing technology.

19  **ANSWER:**  SSI admits Verasonics' personnel, including Dr. Daigle, communicated with SSI's

20  personnel to discuss ultrasound technology.  SSI denies any remaining allegations of this

21  Paragraph of the Complaint.

22       57.     On information and belief, SSI incorporated Verasonics' intellectual property into

23              its commercial ultrasound system, the Aixplorer.

24  **ANSWER:**  Denied.

25       58.     SSI introduced the Aixplorer into the market in or about early 2009.

26

DEFENDANT'S ANSWER TO COMPLAINT 26
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1   **ANSWER:**  SSI admits it began selling the Aixplorer in early 2009.  SSI denies any remaining

2   allegations of this Paragraph of the Complaint.

3           59.      In or about September and October 2009, Verasonics and SSI discussed the

4              royalty due to Verasonics under the JDA on SSI's sales of Aixplorer.  The parties

5              agreed that until a United States Patent issued from Verasonics' PCT Application,

6              SSI would pay the lower lump-sum amount contemplated by the JDA on each

7              sale of Aixplorer and hold in reserve additional sums that would be due on each

8              prior sale of Aixplorer when a United States patent issued from Verasonics' PCT

9              Application.

10  **ANSWER:**  Denied.

11          60.      SSI paid royalties to Verasonics on their sales of Aixplorer from 2009-2014.

12  **ANSWER:**  Denied.

13          61.      SSI monitored the status of Verasonics' patent applications directed to its pixel-

14             oriented processing technology and periodically requested and received updates

15             from Verasonics regarding the status of these patent applications.  In July 2012,

16             Verasonics informed SSI that the PTO Examiner had indicated that he would

17             allow the pending claims of the '456 Patent.  Verasonics forwarded to SSI a copy

18             of one of the independent claims that the Examiner indicated was allowable.  The

19             '456 Patent issued on October 16, 2012.

20  **ANSWER:**  SSI admits it periodically requested and received updates from Verasonics

21  regarding the status of Verasonics' U.S. Pat. Application No. 11/911,633.  SSI admits

22  Verasonics represented to SSI that the PTO Examiner had indicated that he would allow the

23  pending claims of the '456 Patent.  SSI admits Verasonics forwarded to SSI a copy of one of the

24  independent claims that SSI represented that the Examiner indicated was allowable.  SSI admits

25  the face of the '456 Patent states it issued on October 16, 2012.  SSI denies any remaining

26  allegations of this Paragraph of the Complaint.

DEFENDANT'S ANSWER TO COMPLAINT 27
(Case No. 2:17-cv-1764-TSZ)

1    62.    In February 2013, the parties executed an amendment to the JDA ("JDA

2           Amendment") extending the JDA through December 31, 2014.

3    **ANSWER:**   SSI admits that in February 2013, the parties executed the JDA Amendment.  SSI

4    denies any remaining allegations of this Paragraph of the Complaint.

5    63.    The JDA Amendment reiterated that SSI was exclusively licensed to sell

6           ultrasound systems that included Shear Wave Elastography and Strain Imaging

7           features.  The JDA Amendment recognized that the '456 Patent had issued from

8           the PCT Application, and provided for SSI's payment of royalties SSI had held in

9           reserve from past sales of Aixplorer pending issuance of a United States patent

10          from the PCT Application.  The JDA Amendment made clear that going forward

11          the higher running royalty rate, based on the issuance of the '456 Patent, would be

12          due on Aixplorer sales, and also provided for minimum annual royalties.  The

13          JDA Amendment also provided for the payment by SSI of other past due

14          royalties.

15   **ANSWER:**   SSI states that Paragraph 63 purports to characterize the contents of a written

16   document.  The contents of the document speak for themselves and therefore no response is

17   required.  To the extent a response is required, SSI denies the remaining allegations in this

18   Paragraph.

19   64.    The JDA Amendment gave SSI the option to negotiate a non-exclusive license to

20          sell ultrasound systems regardless of whether they included Shear Wave

21          Elastography and Strain Imaging features.

22   **ANSWER:** SSI states that Paragraph 64 purports to characterize the contents of a written

23   document.  The contents of the document speak for themselves and therefore no response is

24   required.  To the extent a response is required, SSI denies the remaining allegations in this

25   Paragraph.

26

DEFENDANT'S ANSWER TO COMPLAINT 28
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

65.     In a March 25, 2014 Preliminary International Offering Memorandum (the "Memorandum"), SSI stated that the license from Verasonics was on the same strategic level as SSI's most strategic patents.  Elsewhere in the Memorandum, SSI reiterated the significance of the license from Verasonics to SSI's Aixplorer system. In the Memorandum, SSI described the benefits to SSI of the Verasonics license:

The Company benefits, through 31 December 2014, the contract end-date, from a worldwide exclusive license relating to the intellectual property rights controlled by Verasonics, Inc. and provided within the context of the parties' cooperation before 5 September 2008, for the purposes of using products in the ultrafast ShearWave™ and [strain] elastographic imaging.  ***This license includes rights over the processor known as Pixel Oriented Processing Engine for its use in the aforementioned products and on the patents enumerated in [Verasonics' patents directed to pixel-oriented processing technology] ....***

The Company benefits, under the terms of the amendment dated 25 February 2013, from a preferential option to obtain a non-exclusive license on ultrasound products, regardless of the technology in question. The Company must take the initiative for this option, noting that the royalty rate and the basis for such a non-exclusive license have already been agreed upon, and it remains up to the parties to negotiate a term for this engagement.

**ANSWER:**  SSI admits that on March 25, 2014, it issued a Preliminary International Offering Memorandum.  SSI states that Paragraph 65 purports to characterize the contents of a written document.  The contents of the document speak for themselves and therefore no response is

DEFENDANT'S ANSWER TO COMPLAINT 29
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1    required.  To the extent a response is required, SSI denies the remaining allegations in this

2    Paragraph.

3          66.      In whitepapers and presentations, SSI touted the "UltraFast" architecture found in

4                   Aixplorer, contrasting it to conventional ultrasound system architectures. SSI

5                   noted that unlike conventional architectures, in Aixplorer, as in Verasonics'

6                   technology, beamforming is performed in software running on a personal

7                   computer and allows for parallel processing of image data.  SSI also stated that

8                   Aixplorer, like Verasonics, had overcome the "technological barrier" of

9                   transferring data from an ultrasound data acquisition board to a host computer at

10                  the rate of "several GigaBytes/s."

11   **ANSWER:**  SSI admits it has previously referenced the "UltraFast" architecture found in the

12   Aixplorer in whitepapers and presentations.  SSI is without knowledge or information sufficient

13   to form a belief as to the truth of the remaining allegations of this Paragraph of the Complaint

14   and therefore denies the same.

15         67.      On information and belief, Aixplorer's software beamforming functionality

16                  embodies and uses Verasonics' patented pixel-oriented processing technology as

17                  well as Verasonics' confidential information and trade secrets.

18   **ANSWER:**  Denied.

19         68.      The JDA Amendment expired on December 31, 2014.

20   **ANSWER:**  Admitted.

21         69.      After expiration of the JDA Amendment, SSI refused to enter into a new license

22                  and refused to pay any further royalties for the use of Verasonics' intellectual

23                  property rights. Although it has claimed it is not utilizing any Verasonics'

24                  intellectual property rights in connection with its Aixplorer product, it has refused

25                  to provide information or documentation to support these assertions, despite

26                  numerous requests by Verasonics.

DEFENDANT'S ANSWER TO COMPLAINT 30
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1   **ANSWER:**  SSI admits that after the expiration of the JDA Amendment, it declined to enter into

2   a further agreement with Verasonics.  SSI admits it has claimed and continues to claim it is not

3   utilizing any Verasonics' intellectual property rights in connection with its Aixplorer product.

4   SSI denies the remaining allegations of this Paragraph.

5       70.     On information and belief, SSI continues to make, use, sell, offer to sell, and

6               import into the United States Aixplorer ultrasound systems based on Verasonics'

7               proprietary and trade secret information and patented pixel-oriented processing

8               technology.

9   **ANSWER:**  Denied.

10  <u>**COUNT I**</u>

11  **INFRINGEMENT OF U.S. PATENT NO. 8,287,456**

12      71.     Verasonics incorporates the allegations in Paragraphs 1-70 of this Complaint as if

13              fully set forth herein.

14  **ANSWER:**  SSI incorporates by reference its answers to Paragraphs 1-70 of this Complaint as if

15  fully set forth herein.

16      72.     SSI has directly infringed at least claims 1 and 25 of the '456 patent by using,

17              selling, offering to sell and importing into the United States Aixplorer ultrasound

18              systems that include software beamforming technology – including the

19              UltraFast™ platform, UltraFast™ Imaging technology and/or sonicsoftware™ –

20              that practices every element of the claims in violation of 35 U.S.C. § 271(a).

21  **ANSWER:**  Denied.

22      73.     SSI has been aware of the '456 Patent and its claims since the '456 Patent issued.

23  **ANSWER:**  Denied.

24      74.     SSI has actively induced infringement of a least claims 1 and 25 of the '456

25              patent in violation of 35 U.S.C. § 271(b) in this District and elsewhere in the

26              United States by, among other things, actively inducing third-parties – including

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1       inter alia distributors and customers – to use, offer to sell, and/or import the

2       accused Aixplorer ultrasound systems with knowledge and intent that such use,

3       offer to sell, sale or importation directly infringes at least claims 1 and 25 of the

4       '456 Patent. Third-parties who use Aixplorer and/or sell, offer to sell and/or

5       import Aixplorer directly infringe at least claims 1 and 25 of the '456 Patent in

6       violation of 35 U.S.C. §271.  On information and belief, SSI directly and/or

7       indirectly intentionally instructs third-parties to infringe through training videos,

8       demonstrations, brochures, installation and user manuals.

9  **ANSWER:** Denied.

10       75.     SSI has contributed to infringement of at least claims 1 and 25 in violation of 35

11       U.S.C § 271(c) in this District and elsewhere in the United States by offering to

12       sell, selling and/or importing into the United States a component of a patented

13       machine, manufacture or combination, or an apparatus for use in practicing a

14       patented process, constituting a material part of the invention, knowing the same

15       to be especially made or especially adapted for use in infringing the '456 Patent

16       and not a staple article or commodity of commerce suitable for substantial non-

17       infringing use.

18  **ANSWER:** Denied.

19       76.     For example, the Aixplorer software that implements beamforming and image

20       formation is a component of a patented machine, manufacture, or combination, or

21       an apparatus for use in practicing a patented process.  Furthermore, this software

22       is a material part of the claimed inventions and upon information and belief is not

23       a staple article or commodity of commerce suitable for substantial non-infringing

24       use.

25  **ANSWER:** Denied.

26       77.     SSI's infringement of the '456 Patent has at all times been willful.

DEFENDANT'S ANSWER TO COMPLAINT 32
(Case No. 2:17-cv-1764-TSZ)

1    **ANSWER:** Denied.

2        78.    As a direct result of SSI's infringement as alleged herein, Verasonics has suffered

3               irreparable injury such that remedies available at law are inadequate to

4               compensate for that injury.

5    **ANSWER:** Denied.

6        79.    Considering the balance of hardships between Verasonics and SSI, a remedy in

7               equity is warranted.

8    **ANSWER:** Denied.

9        80.    The public interest would not be disserved by a permanent injunction against

10              further sales by SSI of Aixplorer.

11   **ANSWER:** Denied.

12                                        <u>**COUNT II**</u>

13                       **INFRINGEMENT OF U.S. PATENT NO. 9,028,411**

14       81.    Verasonics incorporates the allegations in Paragraphs 1-80 of this Complaint as if

15              fully set forth herein.

16   **ANSWER:** SSI incorporates by reference its answers to Paragraphs 1-80 of this Complaint as if

17   fully set forth herein.

18       82.    SSI has directly infringed at least claims 1 and 12 of the '411 patent by using,

19              selling, offering to sell and importing into the United States Aixplorer ultrasound

20              systems that include software beamforming technology – including the

21              UltraFast™ platform, UltraFast™ Imaging technology and/or sonicsoftware™ –

22              that practices every element of the claims in violation of 35 U.S.C. § 271(a).

23   **ANSWER:** Denied.

24       83.    On information and belief, SSI has been aware of the '411 Patent and its claims

25              since the '456 Patent issued.

26   **ANSWER:** Denied.

DEFENDANT'S ANSWER TO COMPLAINT 33
(Case No. 2:17-cv-1764-TSZ)

84.    SSI has actively induced infringement of a least claims 1 and 12 of the '411 patent in violation of 35 U.S.C. § 271(b) in this District and elsewhere in the United States by, among other things, actively inducing third-parties – including inter alia distributors and customers – to use, offer to sell, and/or import the accused Aixplorer ultrasound systems with knowledge and intent that such use, offer to sell, sale or importation directly infringes at least claims 1 and 12 of the '411 Patent.  Third-parties who use Aixplorer and/or sell, offer to sell and/or import Aixplorer directly infringe at least claims 1 and 12 of the '411 Patent in violation of 35 U.S.C. §271. On information and belief, SSI directly and/or indirectly intentionally instructs third-parties to infringe through training videos, demonstrations, brochures, installation and user manuals.

**ANSWER:**  Denied.

85.    SSI has contributed to infringement of at least claims 1 and 12 in violation of 35 U.S.C § 271(c) in this District and elsewhere in the United States by offering to sell, selling and/or importing into the United States a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '411 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:**  Denied.

86.    For example, the Aixplorer software that implements beamforming and image formation is a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, this software is a material part of the claimed inventions and upon information and belief is not a

DEFENDANT'S ANSWER TO COMPLAINT 34
(Case No. 2:17-cv-1764-TSZ)

1   staple article or commodity of commerce suitable for substantial non-infringing

2   use.

3   **ANSWER:** Denied.

4       87.    SSI's infringement of the '411 Patent has at all times been willful.

5   **ANSWER:** Denied.

6       88.    As a direct result of SSI's infringement as alleged herein, Verasonics has suffered

7   irreparable injury such that remedies available at law are inadequate to

8   compensate for that injury.

9   **ANSWER:** Denied.

10       89.    Considering the balance of hardships between Verasonics and SSI, a remedy in

11   equity is warranted.

12   **ANSWER:** Denied.

13       90.    The public interest would not be disserved by a permanent injunction against

14   further sales by SSI of Aixplorer.

15   **ANSWER:** Denied.

16   **COUNT III**

17   **INFRINGEMENT OF U.S. PATENT NO. 9,649,094**

18       91.    Verasonics incorporates the allegations in Paragraphs 1-90 of this Complaint as if

19   fully set forth herein.

20   **ANSWER:** SSI incorporates by reference its answers to Paragraphs 1-90 of this Complaint as if

21   fully set forth herein.

22       92.    SSI has directly infringed at least claims 1 and 7 of the '094 patent by using,

23   selling, offering to sell and importing into the United States Aixplorer ultrasound

24   systems that include software beamforming technology – including the

25   UltraFast™ platform, UltraFast™ Imaging technology and/or sonicsoftware™ –

26   that practices every element of the claims in violation of 35 U.S.C. § 271(a).

DEFENDANT'S ANSWER TO COMPLAINT 35
(Case No. 2:17-cv-1764-TSZ)

1  **ANSWER:** Denied.

2      93.    On information and belief, SSI has been aware of the '094 Patent and its claims

3             since the '094 Patent issued.

4  **ANSWER:** Denied.

5      94.    SSI has actively induced infringement of a least claims 1 and 7 of the '094 patent

6             in violation of 35 U.S.C. § 271(b) in this District and elsewhere in the United

7             States by, among other things, actively inducing third-parties – including inter alia

8             distributors and customers – to use, offer to sell, and/or import the accused

9             Aixplorer ultrasound systems with knowledge and intent that such use, offer to

10            sell, sale or importation directly infringes at least claims 1 and 7 of the '094

11            Patent.  Third-parties who use Aixplorer and/or sell, offer to sell and/or import

12            Aixplorer directly infringe at least claims 1 and 7 of the '094 Patent in violation

13            of 35 U.S.C. §271.  On information and belief, SSI directly and/or indirectly

14            intentionally instructs third-parties to infringe through training videos,

15            demonstrations, brochures, installation and user manuals.

16 **ANSWER:** Denied.

17     95.    SSI has contributed to infringement of at least claims 1 and 7 in violation of 35

18            U.S.C § 271(c) in this District and elsewhere in the United States by offering to

19            sell, selling and/or importing into the United States a component of a patented

20            machine, manufacture or combination, or an apparatus for use in practicing a

21            patented process, constituting a material part of the invention, knowing the same

22            to be especially made or especially adapted for use in infringing the '094 Patent

23            and not a staple article or commodity of commerce suitable for substantial non-

24            infringing use.

25 **ANSWER:** Denied.

26

DEFENDANT'S ANSWER TO COMPLAINT 36
(Case No. 2:17-cv-1764-TSZ)

96.     For example, the Aixplorer software that implements beamforming and image formation is a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process.  Furthermore, this software is a material part of the claimed inventions and upon information and belief is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** Denied.

97.     SSI's infringement of the '094 Patent has at all times been willful.

**ANSWER:** Denied.

98.     As a direct result of SSI's infringement as alleged herein, Verasonics has suffered irreparable injury such that remedies available at law are inadequate to compensate for that injury.

**ANSWER:** Denied.

99.     Considering the balance of hardships between Verasonics and SSI, a remedy in equity is warranted.

**ANSWER:** Denied.

100.    The public interest would not be disserved by a permanent injunction against further sales by SSI of Aixplorer.

**ANSWER:** Denied.

## <u>COUNT IV</u>

**VIOLATION OF THE WASHINGTON STATE UNIFORM TRADE SECRET ACT**

101.    Verasonics incorporates the allegations in Paragraphs 1-100 as if fully set forth herein.

**ANSWER:**  SSI incorporates by reference its answers to Paragraphs 1-100 of this Complaint as if fully set forth herein.

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

102.   Verasonics' confidential information, including the simulator and associated source code, the source code for Verasonics' pixel-oriented processing program, the source code for the HAL, matrices for use with the pixel-oriented processing system, know-how and implementation details regarding pixel-oriented processing, and know-how and implementation details regarding Direct Memory Access ("DMA") are trade secrets because they (1) derive actual and potential economic value from not being generally known to, or readily ascertainable by proper means by, persons who can obtain economic value from their disclosure or use and (2) were the subject of reasonable efforts under the circumstances to maintain their secrecy.

**ANSWER:**  SSI is without knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph of the Complaint and therefore denies the same.

103.   Defendant's use of Verasonics' trade secrets as described above constitutes trade secret misappropriation as prohibited by the Washington State Uniform Trade Secret Act (RCW §§ 19.108 *et seq.*) because Defendant used, without consent, Verasonics' trade secrets despite a duty to maintain their secrecy and limit their use.

**ANSWER:**  Denied.

104.   Defendant's unauthorized use of Verasonics' trade secrets as described above has caused damage to Verasonics and unjustly enriched SSI in an amount to be proven at trial in excess of $75,000.

**ANSWER:**  Denied.

105.   Defendant's unauthorized use of Verasonics' trade secrets as described above is causing and will continue to cause irreparable harm to Verasonics, for which Verasonics has no adequate remedy at law unless Defendant's acts are restrained by this Court.

DEFENDANT'S ANSWER TO COMPLAINT 38
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1   **ANSWER:**  Denied.

2        106.   Verasonics is entitled to preliminary and permanent injunctive relief against

3             Defendant and its officers, agents, servants, employees, and attorneys and all

4             other persons in active concert or participation with any of them against the direct

5             or indirect disclosure, misappropriation, practice or use of its trade secrets,

6             including the marketing, sale and further development of products based on the

7             Aixplorer platform.

8   **ANSWER:**  Denied.

9        107.   In addition, Defendant's actions as described above are willful and malicious and,

10            as a result Verasonics is entitled to its attorneys' fees pursuant to RCW

11            § 19.108.040 and exemplary damages pursuant to RCW § 19.108.030(2).

12  **ANSWER:**  Denied.

13  **PRAYER FOR RELIEF**

14      Wherefore, Verasonics respectfully requests the following alternative and cumulative

15  relief:

16       108.   The Court enter judgment that the '456, '411 and '094 Patents are infringed by

17            Aixplorer and that Verasonics is entitled to an award of damages in an amount to

18            be proven at trial but in no event less than a reasonable royalty;

19  **ANSWER:**  SSI denies that Verasonics is entitled to a judgment that the '456, '411 and '094

20  Patents are infringed by the Aixplorer.  SSI denies that Verasonics is entitled to an award of

21  damages.  SSI denies that Verasonics is entitled to any relief whatsoever, whether as sought in its

22  Prayer For Relief, or otherwise, in connection with this civil action. SSI requests that the Court

23  deny the judgment and requested relief set forth in SSI's Prayer For Relief, or otherwise.  SSI

24  denies the remaining allegations in this Paragraph of the Complaint.

25

26

DEFENDANT'S ANSWER TO COMPLAINT 39
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

109.   The Court permanently enjoin Defendant from any further acts of direct infringement of the '456, '411 and '094 Patents including enjoining any further sales, offers to sell or use by Defendant of Aixplorer in the United States;

**ANSWER:** SSI denies that Verasonics is entitled to a judgment that SSI be permanently enjoined from any further acts of direct infringement of the '456, '411 and '094 Patents.  SSI denies that Verasonics is entitled to any relief whatsoever, whether as sought in its Prayer For Relief, or otherwise, in connection with this civil action.  SSI requests that the Court deny the judgment and requested relief set forth in SSI's Prayer For Relief, or otherwise.  SSI denies the remaining allegations in this Paragraph of the Complaint.

110.   The Court permanently enjoin Defendants from any further acts of indirect infringement of the '456, '411 and '094 Patents including enjoining any further acts of inducement and contributory infringement;

**ANSWER:** SSI denies that Verasonics is entitled to a judgment that SSI be enjoined from any further acts of indirect infringement of the '456, '411, and '094 Patents.  SSI denies that Verasonics is entitled to any relief whatsoever, whether as sought in its Prayer For Relief, or otherwise, in connection with this civil action. SSI requests that the Court deny the judgment and requested relief set forth in SSI's Prayer For Relief, or otherwise.  SSI denies the remaining allegations in this Paragraph of the Complaint.

111.   The Court award Verasonics treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement;

**ANSWER:** SSI denies that Verasonics is entitled to treble damages.  SSI denies that Verasonics is entitled to an award of damages.  SSI denies that Verasonics is entitled to any relief whatsoever, whether as sought in its Prayer For Relief, or otherwise, in connection with this civil action. SSI requests that the Court deny the judgment and requested relief set forth in SSI's Prayer For Relief, or otherwise.  SSI denies the remaining allegations in this Paragraph of the Complaint.

DEFENDANT'S ANSWER TO COMPLAINT 40
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1    112.    The Court declare this case exceptional and award Verasonics its attorneys' fees

2            pursuant to 35 U.S.C. § 285;

3    **ANSWER:**  SSI denies that Verasonics is entitled to a declaration that this case is exceptional.

4    SSI denies that Verasonics is entitled to its attorneys' fees pursuant to 35 U.S.C. § 285.  SSI denies

5    that Verasonics is entitled to an award of damages.  SSI denies that Verasonics is entitled to any

6    relief whatsoever, whether as sought in its Prayer For Relief, or otherwise, in connection with this

7    civil action. SSI requests that the Court deny the judgment and requested relief set forth in SSI's

8    Prayer For Relief, or otherwise.  SSI denies the remaining allegations in this Paragraph of the

9    Complaint.

10    113.    For violation of the Washington State Uniform Trade Secret Act under Count IV,

11            judgment against Defendant for all actual damages suffered by Verasonics as a

12            result of Defendant misappropriating Verasonics' trade secrets, together with any

13            profits or other unjust enrichment gained by Defendant arising from such acts;

14    **ANSWER:**  SSI denies that it has misappropriated any of Verasonics' trade secrets and, as such,

15    SSI denies Verasonics is entitled to an award of damages.  SSI denies that Verasonics is entitled

16    to any profits or other unjust enrichment.  SSI denies that Verasonics is entitled to any relief

17    whatsoever, whether as sought in its Prayer For Relief, or otherwise, in connection with this civil

18    action. SSI requests that the Court deny the judgment and requested relief set forth in SSI's Prayer

19    For Relief, or otherwise.  SSI denies the remaining allegations in this Paragraph of the Complaint.

20    114.    For violation of the Washington State Uniform Trade Secret Act under Count IV,

21            Defendant and its officers, agents, servants, employees, and attorneys and all

22            other persons in active concert or participation with any of them, be enjoined and

23            restrained from using or otherwise profiting from any trade secrets

24            misappropriated from Verasonics, including by being enjoined and restrained

25            from marketing, selling or further developing products based on the Aixplorer

26            platform;

DEFENDANT'S ANSWER TO COMPLAINT 41
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1   **ANSWER:** SSI denies that Verasonics is entitled to judgment that SSI be enjoined and restrained

2   from marketing, selling or further developing products based on the Aixplorer platform.  SSI

3   denies that Verasonics is entitled to any relief whatsoever, whether as sought in its Prayer For

4   Relief, or otherwise, in connection with this civil action. SSI requests that the Court deny the

5   judgment and requested relief set forth in SSI's Prayer For Relief, or otherwise.  SSI denies the

6   remaining allegations in this Paragraph of the Complaint.

7         115.   For violation of the Washington State Uniform Trade Secret Act under Count IV,

8                  judgment against Defendant for exemplary damages in an amount of twice the

9                  sum of the actual loss suffered by Verasonics plus any amount recovered for

10                 unjust enrichment;

11  **ANSWER:** SSI denies that Verasonics is entitled to exemplary damages in an amount of twice

12  the sum of the actual loss suffered by Verasonics plus any amount recovered for unjust enrichment.

13  SSI denies that Verasonics is entitled to any award of damages.  SSI denies that Verasonics is

14  entitled to any relief whatsoever, whether as sought in its Prayer For Relief, or otherwise, in

15  connection with this civil action. SSI requests that the Court deny the judgment and requested

16  relief set forth in SSI's Prayer For Relief, or otherwise.  SSI denies the remaining allegations in

17  this Paragraph of the Complaint.

18        116.   That Defendant be ordered to pay Verasonics' reasonable costs, including

19                 attorneys' fees;

20  **ANSWER:** SSI denies that Verasonics is entitled to judgment that SSI pay Verasonics' reasonable

21  costs and attorneys' fees.  SSI denies that Verasonics is entitled to an award of damages.  SSI

22  denies that Verasonics is entitled to any relief whatsoever, whether as sought in its Prayer For

23  Relief, or otherwise, in connection with this civil action. SSI requests that the Court deny the

24  judgment and requested relief set forth in SSI's Prayer For Relief, or otherwise, at the conclusion

25  of the Complaint.  SSI denies the remaining allegations in this Paragraph of the Complaint.

26

DEFENDANT'S ANSWER TO COMPLAINT 42
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

117.   Defendant be ordered to pay Verasonics' prejudgment interest on all sums
awarded as allowed by law; and

**ANSWER:**   SSI denies that Verasonics is entitled to judgment that SSI pay Verasonics' prejudgment interest.  SSI denies that Verasonics is entitled to an award of damages.  SSI denies that Verasonics is entitled to any relief whatsoever, whether as sought in its Prayer For Relief, or otherwise, in connection with this civil action. SSI requests that the Court deny the judgment and requested relief set forth in SSI's Prayer For Relief.  SSI denies the remaining allegations in this Paragraph of the Complaint.

118.   Such other relief as this Court may deem just and proper.

**ANSWER:** SSI denies that Verasonics is entitled to other relief as this Court may deem just and proper.  SSI denies that Verasonics is entitled to any relief whatsoever, whether as sought in its Prayer For Relief, or otherwise, in connection with this civil action.  SSI requests that the Court deny the judgment and requested relief set forth in SSI's Prayer For Relief, or otherwise, at the conclusion of the Complaint.  SSI denies the remaining allegations in this Paragraph of the Complaint.

## GENERAL DENIAL

Except as expressly admitted herein, SSI denies each and every allegation contained in Verasonics' Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

Subject to the responses above, SSI alleges and asserts the following defenses in response to the allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  In addition, SSI specifically reserves all rights to assert additional defenses that become known to them through the course of discovery.

## AFFIRMATIVE DEFENSE NO. 1

### (Failure To State A Claim)

DEFENDANT'S ANSWER TO COMPLAINT 43
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1   Verasonics has failed to plead a claim upon which relief can be granted.

2   **AFFIRMATIVE DEFENSE NO. 2**

3   **(Statute Of Limitations)**

4   Verasonics' claims are barred, in whole or in part, by the applicable statute of limitations.

5   **AFFIRMATIVE DEFENSE NO. 3**

6   **(No damages)**

7   Verasonics' claims are barred, in whole or in part, because Verasonics has not sustained

8   any injury or damage by reason of any act or omission of SSI.

9   **AFFIRMATIVE DEFENSE NO. 4**

10   **(Failure To Mitigate)**

11   Verasonics has failed to mitigate its damages, if any.

12   **AFFIRMATIVE DEFENSE NO. 5**

13   **(Speculative Damages)**

14   Verasonics' alleged damages or losses, if any, are speculative and/or uncertain and

15   therefore not compensable.

16   **AFFIRMATIVE DEFENSE NO. 6**

17   **(No Entitlement To Injunctive Relief)**

18   Verasonics is not entitled to injunctive relief because any alleged injury to Verasonics is

19   not immediate or irreparable, and Verasonics would have an adequate remedy at law.

20   **AFFIRMATIVE DEFENSE NO. 7**

21   **(Non-Infringement)**

22   SSI does not infringe and has not infringed, directly or indirectly, any valid and

23   enforceable claim of the '456, '411 and/or '094 Patents ("Patents-in-Suit"), literally or under the

24   doctrine of equivalents.  Further, SSI is not willfully infringing and has not willfully infringed

25   any claim of the Patents-in-Suit.

26

DEFENDANT'S ANSWER TO COMPLAINT 44
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1
2

### AFFIRMATIVE DEFENSE NO. 8

### (Invalidity/Unpatentability)

3      The claims of the Patents-in-Suit are invalid, void, or unenforceable for failing to comply

4  with one or more of the conditions for patentability specified Title 35, including but not limited to

5  35 U.S.C. §§ 101, 102, 103, and/or 112.

6

### AFFIRMATIVE DEFENSE NO. 9

7

### (Licensing)

8      Verasonics' claims are barred, in whole or in part, because Defendant is licensed to

9  practice any or all of the Patents-in-Suit referenced in the Complaint.

10

### AFFIRMATIVE DEFENSE NO. 10

11

### (Prosecution History Estoppel)

12      Upon information and belief, Verasonics is barred, in whole or in part, from recovering

13  the relief sought in this action by the doctrine of prosecution history estoppel.

14

### AFFIRMATIVE DEFENSE NO. 11

15

### (Limitations On Damages and Costs)

16      Verasonics' claims for relief and prayer for damages are barred, in whole or in part, or

17  otherwise limited by 35 U.S.C. § 286.  To the extent Verasonics, or any assignee, failed to

18  properly mark any of its relevant products as required by 35 U.S.C. § 287 or otherwise give

19  proper notice that SSI's actions allegedly infringed any claim of the asserted patent, SSI is not

20  liable to Verasonics for the acts alleged to have been performed before SSI received notice that

21  they were allegedly infringing the Patents-in-Suit.  Verasonics is further barred by 35 U.S.C.

22  § 288 from recovering any costs associated with this action.

23

### AFFIRMATIVE DEFENSE NO. 12

24

### (Limitations On Fees)

25      Verasonics cannot prove that this is an exceptional case justifying an award of attorney

26  fees against SSI pursuant to 35 U.S.C. § 285.

DEFENDANT'S ANSWER TO COMPLAINT 45
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1

**AFFIRMATIVE DEFENSE NO. 13**

2

**(Limitations On Costs)**

3

Verasonics is barred from recovering costs in connection with this action under 35 U.S.C.

4

§ 288.

5

**AFFIRMATIVE DEFENSE NO. 14**

6

**(Public Availability Of Trade Secrets)**

7

Verasonics' claims are barred, in whole or in part, to the extent any alleged trade secret

8

referenced in the Complaint is publicly available.

9

**AFFIRMATIVE DEFENSE NO. 15**

10

**(Trade Secrets Readily Ascertainable)**

11

Verasonics' claims are barred, in whole or in part, to the extent any alleged trade secret

12

referenced in the Complaint was readily ascertainable by proper means such as reverse

13

engineering and/or independent discovery.

14

**AFFIRMATIVE DEFENSE NO. 16**

15

**(No Independent Economic Value Of Trade Secrets)**

16

Verasonics' claims are barred, in whole or in part, to the extent any alleged trade secret

17

referenced in the Complaint does not have independent economic value.

18

**AFFIRMATIVE DEFENSE NO. 17**

19

**(No Confidentiality Of Trade Secrets)**

20

Verasonics' claims are barred, in whole or in part, to the extent any alleged trade secret

21

referenced in the Complaint was not treated as confidential by Verasonics.

22

**AFFIRMATIVE DEFENSE NO. 18**

23

**(No Reasonable Precautions)**

24

Verasonics' claims are barred, in whole or in part, to the extent Verasonics failed take

25

reasonable precautions to prevent disclosure of any alleged trade secret referenced in the

26

Complaint.

DEFENDANT'S ANSWER TO COMPLAINT 46
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

**AFFIRMATIVE DEFENSE NO. 19**

**(No Wrongful Acquisition Of Trade Secrets)**

Verasonics' clams are barred, in whole or in part, because Defendant has not wrongfully acquired any of Verasonics' alleged trade secrets.

**AFFIRMATIVE DEFENSE NO. 20**

**(Licensing)**

Verasonics' claims are barred, in whole or in part, because Defendant is licensed to practice any of the alleged trade secrets referenced in the Complaint.

**AFFIRMATIVE DEFENSE NO. 21**

**(No Bad Faith)**

Verasonics' claims are barred, in whole or in part, because Defendant's conduct was, at all times, in good faith and with non-willful intent.

**AFFIRMATIVE DEFENSE NO. 22**

**(Laches)**

Verasonics' trade secret claims are barred, in whole or in part, under the doctrine of laches.

**AFFIRMATIVE DEFENSE NO. 23**

**(Personal Jurisdiction)**

Verasonics' claims are barred, in whole or in part, due to lack of personal jurisdiction.

**AFFIRMATIVE DEFENSE NO. 24**

**(Improper Venue)**

Verasonics' claims are barred, in whole or in part, because this action has not been brought in a proper venue.

**<u>ADDITIONAL DEFENSES RESERVED</u>**

SSI's investigation of their defenses is continuing, and SSI expressly reserves the right to allege and assert any additional defenses available under Rule 8(c) of the Federal Rules of Civil

DEFENDANT'S ANSWER TO COMPLAINT 47
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1  Procedure and/or the Patent Laws of the United States, and any other defenses, at law or in equity,

2  that may now exist or in the future that become available based on discovery and further factual

3  investigation in this case.

4  **<u>DEMAND FOR ATTORNEYS' FEES</u>**

5      SSI requests the Court declare this case exceptional and award SSI its attorneys' fees

6  pursuant to 35 U.S.C. § 285.

7  **<u>JURY TRIAL DEMAND</u>**

8      SSI requests a jury trial for all triable issues in Verasonics' Complaint and SSI's

9  Affirmative Defenses to the extent allowed by the United States Constitution and the Federal

10 Rules of Civil Procedure.

11

12

13

14      June 5, 2018                                    Respectfully submitted,

15

16                                                     /s/ *John V. Gorman*
                                                       John V. Gorman, admitted *pro hac vice*
                                                       Julie S. Goldemberg, admitted *pro hac vice*
17                                                     Morgan, Lewis & Bockius LLP
                                                       1701 Market St.
18                                                     Philadelphia, PA 19102
                                                       Telephone: (215) 963-5000
19                                                     Fax: (215) 963-5001
                                                       E-mail: john.gorman@morganlewis.com
20                                                     E-mail: julie.goldemberg@morganlewis.com

21                                                     Lawrence T. Stanley, admitted *pro hac vice*
                                                       Morgan, Lewis & Bockius LLP
22                                                     One Federal St.
                                                       Boston, MA 02110
23                                                     Telephone: (617) 951-8721
                                                       Fax: (617) 951-8736
24                                                     Email: lawrence.stanley@morganlewis.com

25                                                     Brian W. Esler, WSB No. 22168
                                                       Kellen A. Hade, WSB No. 44535
26                                                     Miller Nash Graham & Dunn LLP

DEFENDANT'S ANSWER TO COMPLAINT 48
(Case No. 2:17-cv-1764-TSZ)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Pier 70
2801 Alaskan Way, Suite 300
Seattle, Washington 98121
Telephone: (206) 624-8300
Fax: (206) 340-9599
E-mail: brian.esler@millernash.com
E-mail: kellen.hade@millernash.com

*Attorneys for Defendant*

DEFENDANT'S ANSWER TO COMPLAINT 49
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1

<u>**CERTIFICATE OF SERVICE**</u>

2          I hereby certify that the following parties were served with a copy of the foregoing via

3     the Court's electronic filing and notification system.

4          Attorneys for Plaintiff:

5               Paul J. Lawrence, WSB No. 13557
                Kymberly K. Evanson, WSB No. 39973
6               Pacifica Law Group
                1191 2nd Avenue, Suite 2000
7               Seattle, WA 98101
                Telephone: (206) 245-1700
8               E-mail: paul.lawrence@pacificalawgroup.com
                E-mail: kymberly.evanson@pacificalawgroup.com
9
                Eric S. Walters, admitted pro hac vice
10              Erica D. Wilson, admitted pro hac vice
                Walters Wilson LLP
11              702 Marshall Street, Suite 611
                Redwood City, CA 94063
12              Telephone: (650) 248-4586
                E-mail: eric@walterswilson.com
13              E-mail: ericawilson@walterswilson.com

14    Signed at Philadelphia, Pennsylvania this June 5, 2018.

15
                                        <u>/s/ John V. Gorman</u>
16
                                        John V. Gorman, admitted *pro hac vice*
17                                      Julie S. Goldemberg, admitted *pro hac vice*
                                        Morgan, Lewis & Bockius LLP
18                                      1701 Market St.
                                        Philadelphia, PA 19102
19                                      Telephone: (215) 963-5000
                                        Fax: (215) 963-5001
20                                      E-mail: john.gorman@morganlewis.com
                                        E-mail: julie.goldemberg@morganlewis.com
21
                                        Lawrence T. Stanley, admitted *pro hac vice*
22                                      Morgan, Lewis & Bockius LLP
                                        One Federal St.
23                                      Boston, MA 02110
                                        Telephone: (617) 951-8721
24                                      Fax: (617) 951-8736
                                        Email: lawrence.stanley@morganlewis.com
25
                                        Brian W. Esler, WSB No. 22168
26                                      Kellen A. Hade, WSB No. 44535

DEFENDANT'S ANSWER TO COMPLAINT 50
(Case No. 2:17-cv-1764-TSZ)

Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103
T: 215.963.5000 | F: 215.963.5001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Miller Nash Graham & Dunn LLP
Pier 70
2801 Alaskan Way, Suite 300
Seattle, Washington 98121
Telephone: (206) 624-8300
Fax: (206) 340-9599
E-mail: brian.esler@millernash.com
E-mail: kellen.hade@millernash.com

*Attorneys for Defendant*

DEFENDANT'S ANSWER TO COMPLAINT 51
(Case No. 2:17-cv-1764-TSZ)